UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**SHERI SPEER**

VS

**NORWICH PUBLIC UTILITIES
LLOYD LANGHAMMER and
DONNA SKAATS**

C.A. NO 3:19CV2005 JCH

United States District Court
District of Connecticut
FILED AT   HARTFORD
12-23                     2019
Robin D. Tabora, Clerk
By_____
Deputy Clerk

**COMPLAINT**

The Plaintiff, Sheri Speer, complains to the best of her knowledge and belief, as follows:

**I. Jurisdictional and Venue Allegations**

1. The Plaintiff is a resident of Norwich, Connecticut, and by virtue of the same, has been forced to transact business with Norwich Public Utilities.

2. Defendant Norwich Public Utilities is a municipal utility corporation authorized and organized under the laws and charter of the City of Norwich. Defendants Lloyd Langhammer and Donna Skaats were and are, at all times alleged herein, affiliated with Norwich Public Utilities as counsel and acting in conspiracy and concert with the same.

3. The Plaintiff brings this action under the Americans with Disabilities Act 42 USC ch. 126 §12101 et seq , as well as 42 USC §1983 and 42 USC §1985. This Court has jurisdiction because the action involves federal questions, which it may entertain pursuant to 28 USC §§1331 and

1343(a). This Court also has supplemental jurisdiction to hear the State Law claims concurrently pursuant to 28 USC §1367.

4. The facts herein were not entirely known and sufficiently discovered to have brought this action until the few preceding months in which it was filed.

## II. General Allegations

5. The Plaintiff was, at all times relevant herein, suffering from "disability" as defined by 42 U.S. Code § 12102 that prevented and impaired her from caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working, and otherwise substantially impaired those major life functions. The Plaintiff was "being regarded as having such an impairment" for the purposes of §12102 for a period greater than six months, beginning on or about January of 2015, with the Plaintiff being certified as such by a healthca re provider, upon inquiry of the Defendants on December 16, 2015 and other occasions to have a "serious illness".

6. At all times relevant herein, the Plaintiff suffered from Major Depression, General Anxiety and Post Traumatic Stress Disorder. Additionally, she was the victim of several domestic assaults from late 2015 into 2016 (one of which involved substantial brain and facial trauma, another

involved a severe burn which took two years to heal and another involved being thrown into a flight of concrete steps after being kicked in the gut), she fell out of a moving vehicle January 1, 2017 (to escape kidnapping, which resulted in an audible cracking of the Plaintiff's skull, the skull stopping the fall), suffered a back injury January 13, 2016, and was severely injured from two car accidents (one in March 2016 and the other in 2015, the first car accident resulting in pelvic misalignment and ligament damage, which causes chronic pain) that required MRIs, extensive physical therapy and other treatments. The assaults (including one incident where the Plaintiff was physically suffocated in the seat of a truck) and car accidents have resulted in permanent nerve damage. The cumulative effect of this trauma has resulted in migraine strength headaches that impair mobility, permanent weakening of the Plaintiff's left arm, an enlarged bursa, chronic pain from a damaged rotator cuff, and disrupted sleep (inability to sleep longer than three hours as a time).

7. The Plaintiff sought reasonable accommodations from Norwich Public Utilities for her serious illness and medical conditions numerous times, which were ignored to the extent they were not referred to Defendant Langhammer, who in turn, on Norwich Public Utilities' behalf, failed to make them or cause them to be made. The result of this denial of reasonable accommodations was that the Plaintiff's water, electricity and

sewer services were terminated on or about April of 2015 to well into 2017.

8. At all times herein, Defendants Langhammer and Skaats were also hired and retained by Seaport Capital Partners, LLC, which has been in numerous litigation disputes with the Plaintiff since 2011. Langhammer and Skaats, with the full authority and sanction of Norwich Public Utilities, used its resources, manpower, access to information and authority to engage in the acts complained of against the Plaintiff in order to damage her in every way possible in order to benefit Seaport Capital Partners, LLC, or alternatively, weaken the Plaintiff through the sheer volume of physical injury, malignment and property damage they effectuated so that Seaport Capital Partners, LLC could more easily prevail over a greatly weakened and physically disabled opponent.

### III. Specific Counts

COUNT ONE – 42 USC §12132, WILFUL DISCRIMINATION AGAINST THE PLAINTIFF FOR HAVING A DISABILITY UNDER THE AMERICANS WITH DISABILITIES ACT

9. At all times herein, the Defendants knew of the Plaintiff's disabilities, which lasted from 2015 onward. They purposely excluded the Plaintiff from reasonable accomodations knowing that doing so would inflict damage on her person, her home and on any prospect she would have to do business, live or participate in society.

10. Among the ways in which the Defendants discriminated against the Plaintiff included power shut offs without notice; disabling Norwich Public Utilities' Internet payment functions as to the Plaintiff's accounts (making it so she could not pay her bill remotely); theft or conversion of her security deposits; including bills that were not the Plaintiff's or in her name onto the personal account of her own home at 151 Talman Street; acquisition of personal and sensitive medical records for public dissemination and use by Seaport Capital Partners, LLC; and selective foreclosure of properties that belonged to the Plaintiff while failing to foreclose on properties owned or controlled by Seaport Capital Partners, LLC that had past due water/sewer/electricity balances.

11. The Defendants not only knew of the Plaintiff's debilitating medical conditions – they outright capitalized on them in a malicious scheme to inflict harm and damage. Termination of utility services reduced the Plaintiff's home to a state of squalor, which included rodent infestation and frozen pipes.

12. In order to survive, the Plaintiff had to purchase a generator for indoor use, the fumes of which aggravated her already serious illnesses. The Plaintiff, while suffering from the severe illnesses and injuries the Defendants maliciously capitalized on in order to break her will and even her physical person, could not bathe in her own home, which regularly

had temperatures below freezing in the winter, and had only one light to illuminate it. The Plaintiff, who was suffering immeasurably from physical trauma, depression and suicidal thoughts – of which the Defendants full well knew – was forced to obtain the services of a plumber to create a functional water system involving an electric pump and a cistern to catch rainwater. The only real lifeline was a garden hose from the Plaintiff's mother's home and water transported to her own home.

13. The Defendants' malicious scheme to malign and purposely mistreat the Plaintiff caused thousands of dollars in damage to the Plaintiff's electronics and applicances. It also resulted in substantial black mold damage to the basement of the Plaintiff's home, which impaired the air quality throughout the Plaintiff's home.

14. Not only did the Defendants knowingly, recklessly and wilfully treat the Plaintiff differently than others with disabilities who were similarly situated – they did so in order to obtain sensitive medical information that they then shared with Seaport Capital Partners, LLC for its full use, enjoyment, benefit, publication and amusement.

15. The Plaintiff is entitled to enforcement of her rights and other remedies under 42 USC §12133 as a consequence of the Defendants' wilful and reckless violation of the Americans with Disabilities Act.

COUNT TWO: 42 USC §1983, FOR DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

16. The Defendants, at all times herein, were government actors as Norwich Public Utilities was a municipal entity, and in that Defendants Langhammer and Skaats were in their employ, and at all times herein acting as their agents.

17. None of the Defendants' actions as complained of had any rational or legitimate government purpose, and in fact were engaged in for the purposes of thwarting the Plaintiff's rights and the policy set forth in the Americans with Disabilities Act as set forth in 42 USC §12101.

18. The Defendants, with Norwich Public Utilities giving the conduct complained of full sanction and acceptance, singled the Plaintiff out for the disparate treatment complained of, and would never treat anyone with severe illness lasting more than six months in the manner they have treated the Plaintiff, especially for the purposes of harming the Plaintiff and otherwise treating her differently because Seaport Capital Partners, LLC asked its attorneys to ask, Norwich Public Utilities to do so. Moreover, Norwich Public Utilities has purposely demanded that the Plaintiff even pay the utility bills currently due and acruing for properties that Seaport Capital Partners, LLC took from the Plaintiff for utility services used by Seaport Capital Partners, LLC and its tenants – property which Defendant Langhammer refused to bring foreclosure

proceedings to take on behalf of Norwich Public Utilities.

19. The Defendants, conspiring with Seaport Capital Partners, LLC in furtherance of its fraudulently concocted involuntary bankrupty styled In Re Speer, 14-21007, did not account for over $5,000 in deposits given to Norwich Public Utilities since 2005, nor did they report their existence or the accounting thereof to either the Trustee or the Plaintiff.

20. The Defendants, maliciously and in bad faith, also fed the Plaintiff's medical information that they fraudulently obtained from her by release to Patrick W Boatman, counsel for Seaport Capital Partners, LLC, for their collective and personal use.

21. The Defendants decided, as official policy of Norwich Public Utilities, that Seaport Capital Partners, LLC be aided, abbetted, helped and assisted in such ways in order to profit and enrich it, give it treatment more faborably than that of the Plaintiff and to otherwise harm and punish the Plaintiff for ever having mounted a defense to Seaport Capital Partners, LLC's fraudulently created loans to her.

22. The official policy, conduct, custom and sanction of the Defendants, as government actors, was to render the Plaintiff mentally unable to mount of own defense to the Defendants' ruthless abuse of process in In Re Speer, 14-21007.

23. All of the above denied the Plaintiff equal treatment under the law, in

violation of the Fourteenth Amendment of the Constitution of the United States, specifically, the Plaintiff's right to equal treatment under the law.

## COUNT THREE: 42 USC §1985(3): CONSPIRACY TO DEPRIVE THE PLAINTIFF OF HER CIVIL RIGHTS

24. The Defendants acted together and seperately in order to deprive the Plaintiff of her rights under the Americans with Disabilities Act and to otherwise cause a public entity, as officers and agents of that entity, to treat her unequally under the law for the benefit of Seaport Capital Partners, LLC.

25. The Plaintiff, the party so injured or deprived, may have an action for the recovery of damages occasioned by such injuries and deprivations complained of herein, against any one or more of the conspirator Defendants.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

26. In engaging in the conduct complained of, the Defendants knew and foreseeably intended that it would result in emotional distress as a result of the Plaintiff's serious illness and disabilities, which they became aware of on or about October of 2015.

27. The Defendants' conduct was extreme and outrageous, including the intentional dissemination of the Plaintiff's medical records with Seaport and others, which did not have a medical release or permission to obtain

said records.

28. The Defendants' conduct proximately caused emotional distress, including suidical thoughts and weight gain.

29. The emotional distress suffered at the hands of the Defendants was barbaric, and was calculated to result in physical harm, and did in fact result in physical harm. These physical manifestations of harm have arisen in the form of sudden weight gain (in 2016, of over 60 pounds requiring medication), sleep loss, interrupted sleep (nightmares), shortness of breath, sensitivity to loud noises, loss of concentration, light headedness and loss of consciousness.

The Plaintiff therefore seeks:

    A. Remedies and damages under 42 USC §12133

    B. Damages and Inunctive Relief Under 42 USC §1983

    C. Damages

    D. Punitive Damages

    E. Costs

    F. Any further relief the Court sees proper

THE PLAINTIFF,
SHERI SPEER

*Sheri Speer*
Sheri Speer
151 Talman Street