**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHERI SPEER | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:19-CV-2005 (JCH) |
| | : | |
|     v. | : | |
| | : | |
| NORWICH PUBLIC UTILITIES, et al., | : | MAY 18, 2021 |
|     Defendants | : | |
| | : | |

**RULING DISMISSING CASE AND IMPOSING SANCTION**

On October 30, 2020, the court issued a Ruling (the "Prior Ruling"), which

dismissed defendant Donna Skaats ("Skaats") from this case with prejudice and ordered

pro se plaintiff Sheri Speer ("Speer") to show cause (1) why the court should not dismiss

Speer's Complaint in its entirety as frivolous, and (2) why the court should not impose a

sanction limiting Speer's ability to file pleadings and other documents in the District of

Connecticut.  See Ruling ("Prior Ruling") (Doc. No. 40).  For the reasons stated below,

the court dismisses Speer's Complaint with prejudice in its entirety and orders that

Speer may not file any new civil actions in the District of Connecticut without leave of

court.

**I.     BACKGROUND**

Speer filed her initial Complaint in this case on December 23, 2019.  See Compl.

(Doc. No. 1).  Speer's Complaint asserts that the defendants intentionally caused her

emotional distress and violated her rights under the Americans with Disabilities Act

("ADA") and the Fourteenth Amendment to the U.S. Constitution by causing her utility

services to be turned off "on or about April of 2015 to well into 2017." See id. ¶¶ 7, 15, 23-26.

The defendants named in Speer's Complaint are Attorney Donna Skaats (who has since been dismissed from this case with prejudice), Attorney Lloyd Langhammer ("Langhammer"), and Norwich Public Utilities ("NPU"). See id. ¶ 2. Speer's Complaint acknowledged that Skaats and Langhammer have been involved, as counsel, "in numerous litigation disputes with [Speer] since 2011." Id. ¶ 8.

On October 20, 2020, the court issued its Prior Ruling, which dismissed Skaats from this case with prejudice. Prior Ruling at 20. The Prior Ruling also ordered Speer to show cause why her entire Complaint should not be dismissed with prejudice and why the court should not impose a sanction requiring Speer to obtain leave of court before filing documents or other pleadings in the District of Connecticut. Id.

With regard to Skaats, the Prior Ruling concluded that "Speer's Complaint does not come close to supporting a plausible inference of any of these claims against Skaats", because "the Complaint is completely devoid of factual allegations with respect to Skaats." Id. at 16-17. Further, the Prior Ruling noted that Skaats represents creditors in a contentious bankruptcy case that was initiated by the filing of an involuntary petition against Speer, and during the course of which Speer was sanctioned for conduct that the Bankruptcy Court described as exhibiting "flagrant disregard for this court's orders" and "bad faith." Id. at 5-7 (citing orders and documents filed in In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.)). The Prior Ruling explained that, "given Skaats's role in representing Speer's creditor[s] in a contentious bankruptcy proceeding, given Speer's well-documented record of employing abusive

litigation tactics, and given the almost utter lack of any basis for Speer's claims [against Skaats], the court cannot help but conclude that Speer's decision to name Skaats as a defendant in the Complaint was done in bad faith and to retaliate against Skaats for her involvement in the bankruptcy case." Id. at 17.

Although Skaats was the only one of the three defendants who moved to dismiss the Complaint, the Prior Ruling indicated that "the court's review of the Complaint in connection with Skaats's Motion leaves the court deeply concerned that the Complaint is frivolous in its entirety." Id. at 18. For this reason, the court ordered Speer to file a memorandum showing cause why the court should not dismiss the Complaint in its entirety. Id. The Prior Ruing specifically asked Speer to "include an explanation as to why her claims are timely, despite section 52-577 of the Connecticut General Statutes, which provides that '[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.'" Id. (quoting Conn. Gen. Stat. § 52-577)). Further, the Prior Ruling observed that "the only allegation in the Complaint that might even suggest conduct by the defendants falling within the limitations period is Speer's statement that '[t]he result of this denial of reasonable accommodations was that the Plaintiff's water, electricity and sewer services were terminated on or about April 2015 to well into 2017.'" Id. at 19 (quoting Compl. ¶ 7).

The Prior Ruling also ordered Speer to "address why the court should not impose a sanction prohibiting Speer from filing documents and pleadings in the US District Court for the District of Connecticut without first obtaining leave of court." Id. The Prior Ruling laid out the factors that the Second Circuit requires district courts to consider when considering sanctions, and the Prior Ruling also recounted that Speer had been

sanctioned by the Bankruptcy Court and by "at least two judges of the Connecticut Superior Court", including one who characterized Speer's conduct before that court as "a very model of abusive use of the courts." Id. at 7-10, 19 (citations omitted).

Days after the court issued the Prior Ruling, the court dismissed Speer's 39th appeal from the bankruptcy proceedings involving the defendants named in the current case. See In re Speer, Case No. 3:20-CV-1095 (JCH), Ruling, ECF No. 21 (Nov. 3, 2020). The court characterized that appeal as "a frivolous attempt to repeat the same arguments the court previously rejected." Id. at 2. Speer's appeal to the Second Circuit was unsuccessful. See In re Speer, Case No. 3:20-CV-1095 (JCH), Mandate of USCA, ECF No. 25 (Apr. 1, 2021). Speer's 40th appeal from the same bankruptcy proceedings is currently pending. See In re Speer, Case No. 3:20-CV-1592 (JCH).

Also pending is another case filed by Speer in the District of Connecticut, in which she alleges that Skaats, Langhammer, NPU, and others are part of group Speer refers to as "The Network." See Speer v. City of Norwich et al., Case No. 3:20-CV-928 (JCH), Compl., ECF No. 1 (July 7, 2020). Speer alleges that the defendants in that case "operate[ ] a closed network cloaked under color of law and municipal authority to decide which property owners and managers get preferential treatment in terms of tax payments, utility payments, utility connection and disconnection and the decision of whether or not to commence or not commence municipal tax foreclosures." Id. ¶ 11. Further, Speer's Complaint in that case refers to both her bankruptcy proceedings and the disconnection of her utility services by NPU and "Attorney Defendants", despite their purported knowledge of Speer's medical conditions, i.e., the allegations underlying the instant case. See id. ¶ 20.

The court also notes that, on March 2, 2021, the Superior Court of Connecticut granted summary judgment on all counts against Speer, in a case filed by Speer against one of the petitioning creditors from her bankruptcy case.  See Speer v. SLS Heating, LLC, No. KNLCV195021068S, 2021 WL 1235733, at *1 (Conn. Super. Ct. Mar. 2, 2021).  The grounds for summary judgment in that case included that all four of Speer's substantive counts were barred by the applicable statutes of limitations, including section 52-577 of the Connecticut General Statutes.  Id. at *7-8.

Turning back to the current case, the court notes that it has received several filings in response to its Prior Ruling.  First, on November 18, 2020, Speer filed a six-page Response and approximately 170 pages of exhibits.  See Resp. to Order to Show Cause ("Pl.'s Resp.") (Doc. No. 41).  In her Response, Speer complains that the court "did not describe the scope, length and conditions for should be imposed [sic], nor under what authority or rule would apply [sic]" with respect to the sanctions being considered.  Id. at 1.  Speer also states that, "[i]n the sense that the Court determined this action is frivolous, the Court is wrong" because "[i]nformation currently in the possession of the Plaintiff shows that the Court is wrong and there is probable cause for the filing of this action."  Id.  Additionally, Speer asserts that "information in the form of emails and documents obtained by way of Freedom of Information Act request and withheld from the Plaintiff prevent the action from moving forward--as did the bankruptcy the Defendants have misplaced a reliance upon in order to continue to frustrate the ability to bring this action."  Id.

The exhibits accompanying Speer's Response include emails, a complaint filed by Speer with Connecticut's Public Utilities Regulatory Authority ("PURA"), utility bills,

and notices concerning termination of utility services.  See id. at 8-179.  These

documents also include a copy of an Order issued by the Bankruptcy Court, on May 14,

2015, directing "Norwich Public Utilities [to] appear and show cause regarding its

alleged termination of electrical and water services to real property owned by [Speer] or

to the residence of [Speer]."  Id. at 13.

On December 11, 2020, with leave of court, Langhammer filed a Reply to

Speer's Response.  See Reply to Resp. to Order to Show Cause ("Langhammer's

Reply") (Doc. No. 49).  Langhammer indicates in his Reply that Speer has filed three

ethics complaints, a bar association grievance, and several PURA complaints against

him.  Id. ¶ 10.  Langhammer also notes that Speer's Response omitted any discussion

of the outcome of the Order to Show Cause issued by the Bankruptcy Court concerning

the termination of Speer's utility services.  Id. ¶ 6.  Langhammer included, as Exhibit A

to his Reply, a copy of the Bankruptcy Court's Order, dated June 25, 2015, in which the

Bankruptcy Court concluded that "NPU was within its rights to terminate [Speer]'s utility

services."  See Langhammer's Reply at 12.  This Order also includes the Bankruptcy

Court's findings that Speer's electricity service was shut off on April 22, 2015, and that

her water service was shut off on April 23, 2015.  Id. at 9.

Additionally, Langhammer included, as part of Exhibit B to his Reply, another

Order issued by the Bankruptcy Court, from July 6, 2015.  See Ex. B., Langhammer's

Reply at 18-23.  This Order indicates that, around the same time as the episode

involving termination of Speer's utility service, Speer brought to the Bankruptcy Court's

attention multiple reports of medical procedures and conditions, in connection with

Speer's absence from scheduled proceedings.  See id. at 20-22.  Speer twice indicated

that she could not testify due to oral surgery.  Id.  at 20 n.1.  Further, Speer claimed that

medical conditions restricted her ability to participate in court proceedings during

periods of time when she was nevertheless able to file multiple documents with

"citations to a dozen cases and several of the Federal Rules of Civil Procedure."  Id. at

21.

On December 16, 2020, with leave of court, NPU also filed a Reply to Speer's

Response.  See NPU's Mem. to Pl.'s Resp. to Order to Show Cause ("NPU's Reply")

(Doc. No. 50).  NPU argues in its Reply that Speer's Complaint should be dismissed

with prejudice because it is frivolous, and because her claims are barred by the

doctrines of res judicata and collateral estoppel, as well as by section 52-577.  See id.

at 3-13.

On January 11, 2021, without seeking leave of court, Speer filed a Response to

the Langhammer's and NPU's Replies, along with over 100 pages of documents

pertaining to various disputes between Speer, Langhammer, NPU, Skaats, and other

individuals and entities.  See Response to Defs. Langhammer & NPU's Reply to Order

to Show Cause ("Pl.'s Suppl. Resp.") (Doc. No. 52).  As the court indicated previously,

the court construed this Response as a Motion for Leave to File and granted it.  See

Order (Doc. No. 53).

## II.      DISCUSSION

### A.      Dismissal of the Current Case

As the court explained in its Prior Ruling, although Skaats was the only

defendant who filed a Motion to Dismiss, "the court's review of the Complaint in

connection with Skaats's Motion le[ft] the court deeply concerned that the Complaint is

frivolous in its entirety."  Prior Ruling at 18.  In particular, the court observed that

Speer's claims appear to be barred on their face by section 52-577 of the Connecticut

General Statutes, which provides that "[n]o action founded upon a tort shall be brought

but within three years from the date of the act or omission complained of."  Id. (quoting

Conn. Gen. Stat. § 52-577).

The Second Circuit has recognized that "district courts may dismiss a frivolous

complaint sua sponte even when the plaintiff has paid the required filing fee."  Fitzgerald

v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000).  In the context

of interpreting section 1915 of title 28 of the U.S. Code, which addresses review of

complaints filed by pro se litigants proceeding in forma pauperis, the Second Circuit has

held that an action may be dismissed as frivolous if a complaint is time-barred on its

face under the applicable statute of limitations.  Pino v. Ryan, 49 F.3d 51, 53-54 (2d Cir.

1996); see also Walters v. Indus. & Commercial Bank of China, Ltd., 651 F.3d 280, 293

(2d Cir. 2011) ("[A]lthough the statute of limitations is ordinarily an affirmative defense

that the defendant must raise . . . district courts may dismiss an action sua sponte on

limitations grounds in certain circumstances where the facts supporting the statute of

limitations defense are set forth in the papers plaintiff himself submitted." (citations and

internal quotation marks omitted)).

Section 52-577 applies to Speer's claims, which allege that the defendants

violated her rights to equal treatment under the law and to be free from disability-based

discrimination, and that the defendants intentionally inflicted emotional distress.  See

Prior Ruling at 18-19 (citing Loonsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994), M.K.

ex re. Mrs. K. v. Sergi, 554 F. Supp. 2d 175, 193 (D. Conn. 2008), and Duprey v. Conn.

Dep't of Motor Vehicles, 191 F.R.D. 329, 340-41 (D. Conn. 2000)); Watts v. Chittenden,

301 Conn. 575, 596 (2011) (applying section 52-577 to claims for intentional infliction of

emotional distress).  "[W]ell-established precedent of [Connecticut] . . . establishes that

[section] 52-577 operates as a bar to tort claims irrespective of when they accrue."

Tunick v. Tunick, 201 Conn. App. 512, 530 (2020) (citing Fichera v. Mine Hill Corp., 207

Conn. 204, 212 (1988)).  Thus, "'[t]he date of the act or omission complained of'

pursuant to [section] 52-577 is the date when the conduct of the defendant occurs."  Id.

(citing Certain Underwriters at Lloyd's, London v. Cooperman, 289 Conn. 383, 408

(2008)).

   "[T]he possibility that equitable tolling might apply [to section 52-577] . . . is

foreclosed by Connecticut precedent, which establishes [section] 52-577 as a statute of

repose not susceptible to equitable tolling."  Gerena v. Korb, 617 F.3d 197, 206 (2d Cir.

2010) (citation omitted).  However, section 52-577 may be tolled under the continuous

course of conduct doctrine or due to fraudulent concealment.  Tunick, 201 Conn. App.

at 536-53.

   The continuous course of conduct doctrine applies if "the defendant (1)

committed an initial wrong . . . (2) owed a continuing duty to the plaintiff that was related

to the alleged original wrong; and (3) continually breached that duty."  Id. at 535 (citation

omitted).  This doctrine typically applies "when a fiduciary relationship exists between

the parties," id. at 536, though "the existence of an original duty is not necessary . . . in

cases of intentional infliction of emotional distress", Watts, 301 Conn. at 596.  A

defendant's conduct is continuous, for the purposes of the continuous course of conduct

doctrine, when the defendant causes "a continuous series of events that gives rise to a

cumulative injury." Tunick, 201 Conn. App. at 548 (citation omitted).  The doctrine

primarily serves to address circumstances where, "during an ongoing relationship,

lawsuits are premature because specific tortious acts or omissions may be difficult to

identify and may yet be remedied." Id. at 541 (citation omitted).

A plaintiff may toll section 52-577 due to fraudulent concealment if a plaintiff

shows, by "clear, precise, and unequivocal evidence", that a defendant was actually

aware of the facts necessary for a plaintiff to bring a claim and intentionally concealed

such facts from a plaintiff, for the purpose of delaying the filing of a claim.   Id. at 552

(citations omitted).

Speer filed her Complaint on December 23, 2019.  See Compl.  Therefore,

unless there is a basis for tolling, section 52-577 bars claims based on acts or

omissions that occurred before December 23, 2016.  See Conn. Gen. Stat. § 52-577.

The Complaint alleges that the defendants caused Speer's utility services to be shut off

in April 2015.  Compl. ¶ 7.  Although the Complaint states that the services "were

terminated . . . well into 2017", id., the Complaint does not allege any facts supporting

an inference that the defendants engaged in a continuous course of conduct that

stretched beyond December 23, 2016.  As best as the court can tell, the phrase "well

into 2017" either reflects that Speer's utility services were restarted in 2017, or it is a

non-sequitur with no corresponding factual allegations.

Even assuming that Speer's utility services were not restarted until 2017, this

would not trigger the continuous course of conduct doctrine, because the Complaint is

devoid of any facts reflecting a "series of events that give rise to a cumulative injury."

Tunick, 201 Conn. App at 548 (citation omitted).  The mere fact that an injury, such as

10

termination of utility services, has not been reversed or otherwise redressed does not permit a court to disregard section 52-577.

Despite this court's express instruction to Speer to "include an explanation as to why her claims are timely, despite section 52-577", Prior Ruling at 18, neither of Speer's two Responses, nor any of the over 250 pages of documents she submitted together with her Responses, explains why section 52-577 does not bar her claims.  In her first Response, Speer appears to gesture toward this issue obliquely, by stating "[t]hat information in the form of emails or documents obtained by way of Freedom of Information Act request and withheld from the Plaintiff prevented the action from moving forward--as did the bankruptcy the Defendants have misplaced a reliance upon in order to continue to frustrate the ability to bring this action."  Pl.'s Resp. at 1.  However, Speer provides absolutely no explanation as to why she could not have brought this action until December 2019.

To the contrary, Speer's submission to this court of an Order to Show Cause issued by the Bankruptcy Court on May 14, 2015, makes clear that Speer contested the April 2015 termination of her utility services almost immediately after it occurred.  See Pl.'s Resp. at 13.  To the extent that Speer might be attempting to argue that, although her utility services were stopped in April 2015, her claims nevertheless did not accrue until she obtained copies of emails sent by the defendants, "well established precedent of [Connecticut]" provides "that [section] 52-577 operates as a bar to tort claims irrespective of when they accrue."  Tunick, 201 Conn. App. at 530.

Additionally, neither of Speer's Responses, nor any of the documents submitted in connection with her Responses, provides any basis for a finding that section 52-577

should be tolled on account of fraudulent concealment.  The documents provided by

Speer make clear that she and the defendants have been involved in several

contentious court proceedings, but none of the documents comes anywhere close to

supporting a reasonable inference that any of the defendants, for the purpose of

delaying Speer's filing of her Complaint, intentionally concealed facts that Speer needed

in order to pursue her claims in this case.   See Tunick, 201 Conn. App. at 552.

Therefore, the court concludes that section 52-577 bars all of Speer's claims.

See Conn. Gen. Stat. § 52-577.  The court dismisses Speer's Complaint, in its entirety,

with prejudice, on the ground that it is time-barred on its face and therefore frivolous.

See Fitzgerald, 221 F.3d at 364; Pino, 49 F.3d at 53-54.  Despite the court's express

instruction in its Prior Ruling to Speer to address section 52-577, and despite Speer's

submission of two Responses and over 250 pages of documents, Speer has failed to

identify any persuasive reason why section 52-577 does not bar all of the claims in her

Complaint.  Accordingly, granting leave to amend the Complaint would be futile.  See

Foman v. Davis, 371 U.S. 178, 182 (1962).

      B.     Leave-to-File Sanction

The Court's Prior Ruling also ordered Speer to show cause "why the court should

not impose a sanction prohibiting Speer from filing documents and pleadings in the U.S.

District Court for the District of Connecticut without first obtaining leave of court."  Prior

Ruling at 19.  As also detailed in the Prior Ruling, courts in the Second Circuit consider

the following factors before determining whether to impose such a sanction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3)

whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 538 (2d Cir. 2005) (citing

Safir v. United States Lines, Inc. 792 F.2d 19, 24 (2d Cir. 1986)).

The first factor, "the litigant's history of litigation and in particular whether it

entailed vexatious, harassing or duplicative lawsuits", Iwachiw, 396 F.3d at 528, weighs

heavily in favor of imposing a leave-to-file sanction.  This case is one of many filed by

Speer against the creditors from her bankruptcy proceedings and their attorneys.  Most

recently, Speer filed yet another case, against a group of defendants that includes the

same defendants named in the current case, based on allegations that include the

disconnection of her utility services by NPU and "Attorney Defendants", i.e., the incident

underlying her Complaint in the current case.  See Speer v. City of Norwich et al., Case

No. 3:20-CV-928 (JCH), Compl., ECF No. 1 (July 7, 2020); id. ¶ 20.  Further, Speer has

filed 40 appeals from orders issued by the Bankruptcy Court.  As discussed above, this

court determined that Speer's 39th appeal was "a frivolous attempt to repeat the same

arguments the court previously rejected.  In re Speer, Case No. 3:20-CV-1095 (JCH),

Ruling, ECF No. 21 (Nov. 3, 2020), at 2.  The new civil action is clearly duplicative of the

current case, and the recent bankruptcy appeals are clearly duplicative with respect to

each other.  Given the voluminous documents Speer has submitted regarding the

history of contentious litigation between her and the defendants, it appears highly likely

that these actions are also harassing.

The second factor, whether "the litigant ha[s] an objective good faith expectation of prevailing", Iwachiw, 396 F.3d at 528, also weighs in favor of imposing a leave-to-file sanction.  Given that Speer's Complaint was time-barred on its face under section 52-577, she could not have had an objective good faith expectation of prevailing.  Further, although a subjective expectation of prevailing is not a factor that the court must consider, the court notes that the fact that Speer has filed 40 appeals from her bankruptcy proceedings suggests that Speer is comfortable litigating with neither a subjective nor an objective good faith expectation of prevailing.

The third factor, "whether the litigant is represented by counsel", Iwachiw, 396 F.3d at 528, weighs against a leave-to-file sanction, given that Speer is proceeding pro se.  However, the court assigns less weight to this factor than it might otherwise assign, given Speer's extensive history of litigating in both state and federal courts.  Further, Speer has been the subject of sanctions in both state court and bankruptcy court.  In short, although she is not a lawyer and is not represented by a lawyer, she has received ample notice as to her responsibility as a litigant not to file frivolous actions.

The fourth factor, "whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel", weighs strongly in favor of imposing a leave-to-file sanction.  Speer has not only filed duplicative and frivolous of lawsuits, she has also filed specific pleadings and other documents that have imposed needless expense to other parties and posed unnecessary burdens on the courts.  In this case, for example, none of the over 250 pages of documents Speer filed together with her Responses to the Prior Ruling was responsive to the court's instruction for Speer to address section 52-577, and many of

these documents--particularly the documents Speer submitted together with her second

Response--are irrelevant, except to underscore the level of animosity between Speer

and the defendants.

The fifth factor, "whether other sanctions would be adequate to protect the courts

and other parties", Iwachiw, 396 F.3d at 528, also weighs in favor of imposing a leave-

to-file sanction.  Part of the Bankruptcy Court's rationale for imposing a leave-to-file

sanction against Speer was that Speer had failed to pay a monetary sanction previously

imposed by the Bankruptcy Court.  See In re Speer Case No. 14-21007 (AMN) (Bankr.

D. Conn.), Order Granting Mot. for Injunctive Order Pursuant to D. Conn. L. R. 16(g)(2),

ECF No. 1708 (July 27, 2018).

With regard to the precise scope of a leave-to-file sanction, however, the court

doubts that a sanction "prohibiting Speer from filing [any] documents and pleadings in

the U.S. District Court for the District of Connecticut without first obtaining leave court",

Prior Ruling at 19, is strictly necessary.  Rather, a sanction roughly equivalent to section

1915A of title 28 would suffice.

Section 1915A is a part of the Prison Litigation Reform Act ("PLRA").  As the

Second Circuit has recognized, a "compelling purpose of the statute was to give district

courts greater power to protect their dockets from meritless lawsuits."  Harris v. City of

New York, 607 F.3d 18, 23 (2d Cir. 2010) (citations omitted).  However, section 1915A

does not place a blanket restriction on all documents and pleadings filed by prisoner-

plaintiffs.  Instead, it erects a gatekeeping mechanism requiring district courts to review

complaints "before docketing, if feasible or, in any event, as soon as practicable after

docketing." 28 U.S.C. § 1915A(a).  During this initial review of a complaint, section

1915A imposes the following duty on district courts:

> (b) Grounds for dismissal.  On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from the defendant was immune from such relief.

Id. § 1915A(b).  Service of process does not occur until after this initial review is

conducted.  See McEachin v. McGuinnis, 357 F.3d 197, 200-01 (2d Cir. 2004).

After consideration of the factors discussed above, both individually and in

connection with each other, the court concludes that a sanction imposing an initial

review requirement roughly equivalent to section 1915A is appropriate and necessary.

**Any time Speer wishes to file a new action in the District of Connecticut, Speer, or**

**any individual or entity acting for her, or at her behest, must file, instead of a**

**complaint, a motion for leave to file, with a proposed complaint attached.  The**

**Clerk of the Court shall not file any new action submitted by Speer but shall first**

**provide any such motion for leave to file and proposed complaint to the assigned**

**judge to determine whether leave to file should be granted.  The assigned judge**

**will then conduct an initial review of a proposed complaint, and the court will**

**deny the motion for leave to file with respect to any portion of the proposed**

**complaint that is frivolous, malicious, or fails to state a claim upon which relief**

**may be granted.  Only after this initial review may Speer serve process and file**

**other documents.**

Given the volume of litigation initiated by Speer, the court determines that this sanction is responsive to Speer's particular conduct.  The court also notes that the sanction is roughly equivalent to a statutory requirement faced by prisoner-plaintiffs across the country.  As with the PLRA, the court's sanction does not prohibit Speer from proceeding with new, non-frivolous lawsuits.  Rather, the court's sanction strikes a balance between minimizing the impact of duplicative or otherwise frivolous lawsuits and preserving Speer's access to the courts.

**This sanction will remain in place at least until Speer files a complaint that survives an initial review.  If Speer files a complaint that survives an initial review, she may then file a motion, on this docket (Case No. 3:19-CV-2005), seeking termination or modification of the sanction.  At such time, the court will consider whether the sanction remains appropriate and necessary, in light of the factors discussed above, and in light of whether Speer has sought leave to file proposed complaints that are frivolous.**

III.    CONCLUSION

For the reasons discussed above, the court dismisses the Complaint, in its entirety, **with prejudice**.  The Clerk is directed to close the case.

Additionally, the court imposes the following sanction.  **Any time Speer wishes to file a new action in the District of Connecticut, Speer, or any individual or entity acting for her, or at her behest, must file, instead of a complaint, a motion for leave to file, with a proposed complaint attached.  The Clerk of the Court shall not file any new action submitted by Speer but shall first provide any such motion for leave to file and proposed complaint to the assigned judge to determine whether**

17

**leave to file should be granted.  The assigned judge will then conduct an initial review of a proposed complaint, and the court will deny the motion for leave to file with respect to any portion of the proposed complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted.  Only after this initial review may Speer serve process and file other documents.**

**This sanction will remain in place at least until Speer files a complaint that survives an initial review.  If Speer files a complaint that survives an initial review, she may then file a motion, on this docket (Case No. 3:19-CV-2005), seeking termination or modification of the sanction.  At such time, the court will consider whether the sanction remains appropriate and necessary, in light of the factors discussed above, and in light of whether Speer has sought leave to file proposed complaints that are frivolous.**

**SO ORDERED.**

Dated this 18th day of May 2021, at New Haven, Connecticut.


 /s/ Janet C. Hall
Janet C. Hall
U.S. District Judge